Good morning, Mr. Antonetti. Good morning, Your Honors, and may it please the Court, Salvador Antonetti for Appellant National Western Life Insurance Company. I would like to reserve two minutes at the end of the argument for rebuttal. Thank you, Your Honors. There is one key undisputed fact in this case that helps us determine most, if not all, of the issues here, and it is that the decedent, Mr. Carlos Iglesias, purchased two annuities and designated his brother Francisco as the beneficiary. This fact is stipulated, and this fact was also reflected in the Court's opinion and order. Notwithstanding this fact, the judgment below sets aside that designation and nulls both annuities based on what we find are incorrect interpretations of the stipulated facts and also incorrect interpretations of law, and contrary, obviously, to the plaintiff's expressed intent as found in the stipulated facts. It also does so in the absence of the beneficiary against National Western's objections and repeated motions on that issue. Worse still, the district court then provided a remedy not allowed by Puerto Rico law. It provided that the, it voided both annuities, and as a matter of Puerto Rico law, on the penalty of a contract, the parties need to engage in mutual and simultaneous restitution. The district court ordered National Western to pay the plaintiff's, the premiums paid under the policies, but did not order anybody to return to National Western any monies that it had paid out. Can I understand the stipulation and what you mean to make of the stipulation that it was purchased? Do you mean that, I mean, how could they, if they stipulate to that, what are they suing them? Their claim is that as a matter of law, regard, even though the beneficiary was designated and that was the intent, that as a matter of law, that intent was void. It was no legal effect. So what's the significance of the stipulation then, given that that's their argument? If that's a viable argument, you might challenge it on the law, say they got the law wrong, but so what about the stipulation? What's the significance of it? Well, we think, we will demonstrate that the law is wrong and therefore that there should be, once the law is clear, the court will be clear then that the annuity was valid. But they're not disputing that, are they? If they're just making a legal argument. I don't follow the significance of the stipulation. How does it help you or hurt you? It just seems beside the point. No one's disputing that if there's not a legal reason to invalidate the contract, the contract is valid. Yes, Your Honor, but nevertheless, the point is, we want to trace the logic of the argument because the fact is that, in this case, the fact that the beneficiary was designated was used, was not taken into due consideration by the court in making its ruling on the issue of the indispensability of the missing brother and also with respect to the validity of the agreements. Specifically with the validity of annuity number two, the issue of the beneficiary is critical, and I'll explain in a moment. With respect to the, actually I'll start with that one. With respect to the beneficiary of the second annuity, the court spends a lot of time, frankly, discussing an issue that had been raised originally with respect to the indispensability prong of the Rule 19 argument. And that is, who was the owner of annuity number two? The court seemed to believe, and it says so in its opinion, that there's a dispute over who is the owner of annuity number two, that that somehow invalidates the annuity itself. And we have, frankly, that is incorrect. First, the ownership of the beneficiary. Well, the court says the beneficiary is the owner, does it not? Is that, that's incorrect? Actually, that was our position. The court said that there was a dispute over that. And with respect to annuity number two, annuity number, let's step back. With these types of policies, the purchaser of the policy, the annuitant, can, the contract remains silent about who is the owner. The annuitant is the owner. They can also designate a specific owner. And the reason is that the annuities of this sort have two types of benefits. One is, during the life of the annuitant, the owner receives interest payments after an accumulation period, in this case, 10 years. And that interest, the right to earn interest during the life of the annuitant is one benefit. Upon the death of the annuitant, however, then it becomes more like a life insurance policy and there is a benefit paid out upon the death of the annuitant. And that goes to the beneficiary. Now, in this particular case, annuity number two did designate the brother, Francisco, as owner and also as beneficiary. There is some dispute on the record, and we have explanations about why the dispute should not matter as to ownership. But nevertheless, there's some dispute as to the signature of the brother on the ownership part of the policy. But there is no doubt that he was a designee of the benefits upon death of the annuitant. That is the only benefit at issue in this case, because both annuities were entered into the same year that the decedent died, the annuitant died. And so the benefits to owners would never come into play. That would have come into play about nine years later. So in the end, the bottom line, I'm going to try to simplify the case a bit for the court. The bottom line is that the only benefit here that was activated was the benefit upon the death of the annuitant, and it's clear that the beneficiary of that portion of the policies was the missing brother, Francisco, who lives in Spain. And so in that regard, we think that the district court missed the point. The issue of the ownership of annuity number two was raised originally to deal with issues with respect to the interest of the missing counsel. So just speaking only for myself, you're spending a lot of time on the merits, if you will, the determination that these two policies are null and void. I would like to hear you address a bit more the procedural question, which you've also raised. Your position was this suit should have been dismissed because of the absence of an indispensable parties. I'd like to hear you focus on that, if you would, please. Okay. Thank you, Your Honor. I was trying to follow the train of thought with respect to the question. I understand. With respect to the issue of Rule 19 of dispensability, our general position is that this is a contract to which the beneficiary is also a party, and that there's case law in Puerto Rico that upon receipt and acceptance of the benefits under a policy of this sort, the beneficiary also becomes a party to the contract. In fact, my client paid out the benefits under the policy as it was required under Puerto Rico law. There was no challenge or there's no question that he was a beneficiary. The insurance company cannot presume to decide on its own not to pay out and decide that a policy is valid. The court seemed to take the view that upon the death of the annuitant, the payment of the policy to Francisco, that this is a fully executed contract and, in essence, whatever his status was prior to the death of the annuitant just didn't matter anymore. The court, frankly, shows confusion at several points during the opinion between the status as an owner and beneficiary and mixes that up. The status that ends upon the death of the annuitant is the status as owner, but we're saying that those benefits never came into play anyway. The status that became actually activated, let's say, upon the death of the annuitant is the status as beneficiary, and there's no doubt that he was a beneficiary. And not only that. When you say he, you're talking about the Spanish. The Spanish, the brother, Francisco. And, in fact, he affirmatively sought those benefits and engaged in contacts directly with National Western in Austin, Texas, to seek the paperwork, fill out the paperwork, submit it, and request and receive the payments under the beneficiary portion of the annuities, both annuities. And, in fact, National Western did so. There was nothing on the record to suggest that he was not the beneficiary, and the company did so. Now the problem is that plaintiffs seek to annul these both annuities in the absence of the beneficiary. But how in any realistic, pragmatic way can these proceedings that we're dealing with have any effect on Francisco? Two ways, Your Honor. First of all, he, as a beneficiary, he is a party, there's a Puerto Rico, the provision that the court used as a remedy was Article 1255 of the Civil Code. And that provision requires a simultaneous restitution by the contracting parties in case of nullification. He is a party to that agreement as well, upon the acceptance of the benefits. And so, therefore, his right under Puerto Rico law in the same contract is invalidated by what the court did here. Now, of course, the fact that he may have now an affirmative defense saying, well, I was as a matter of due process of the equivalent in Spain or maybe the district of Texas, still he may have possibly some defenses saying, well, I wasn't hailed into court in this proceeding. But the fact is the same contract gives rise simultaneously. There's a nullification of that contract that simultaneously, according to the district court, invalidates his claim and our decision to give it to him. Is that a point about Rule 19 or is that a point about Puerto Rico contract law? It goes to both because it's the same underlying obligation. How does it, what aspect of Rule 19 does that relate to? Rule 19A because. Complete relief? Hmm? The complete relief? Well, complete relief and also the fact that it has, it subjects my client to double and or inconsistent obligation. What's the double obligation? Well, because it has, under the same agreement, paid out benefits. And under the same agreement, it's supposed to return the premiums. As part of an order. It's not obliged to pay out the benefits. It did. Yeah. Because. There's no obligation to do anything. In the judgment itself? No. No, in the judgment itself, it's not obligated. So, how would there be inconsistent obligations imposed on you? Because. You don't have to do anything with respect to the other party. He already got the money. What you have is a potential right not to pay him, but too bad, you already paid him. So, what's the inconsistent obligation on you? You have to return the premium. You can do that. And you don't have to pay him anymore. So, I don't get where there's an inconsistent obligation. The fact is, we did. It's not, you come out poorly, I understand. It's bad for you. But I don't get how it's inconsistent obligation. It's also bad for the missing brother because we will use this judgment. That's not an inconsistent obligation. That's impairing his interest. Correct. And I'm also, we're raising both, Your Honor. Just those two? Yes, Your Honor. Well, we're raising, actually, no, we also have complete relief among the parties because all three are parties of the same agreement. Did you raise that below? Yes. So, the court says that, you raise that point that if you're obligated to return the premiums to the widow and her children, that would then incentivize you to go after Francisco and that might put him in a difficult position. And the court seems to say, well, you would only be incentivized to do that if you lose on the meriteer and you would lose on the meriteer because your client was so negligent, sloppy, in the way that it handled the issuance of these policies and that would so weaken any attempt to get a claim from Francisco. There's really not much, realistically, that Francisco has to worry about. Is there anything wrong with that analysis by the district court? You talk about negligence and, actually, that wasn't the theory of the case, nor was it the theory of the opinion. Well, perhaps that was my gloss, which I should not have made, but the opinion of the district court is replete with the description of irregularities in the way in which these policies were issued. I mean, that district court spends a large amount of time, with respect to each policy, explaining what was wrong with the way your client handled those policies. And, Your Honor, I have an observation to make about that point, which is the fact that a lot of those factual inferences were made against the non-moving party, which is contrary to Rule 56 case law. If you look at the joint statement of stipulated facts, a lot of those irregularities and the interpretations made of them, should I finish answering the question? Go ahead. Your Honor, there's cross motions for summary judgment here. And one of the problems that we have here, in a sense, is that even though the court thought that there were some issues and irregularities, it couldn't then turn and say, since you're not getting summary judgment in your favor, that automatically means that I get to issue summary judgment in favor of the plaintiff. And so that's another underlying issue here. But with respect to the Rule 19 question that was on the table, what we want to point out is that, again, these are three contracting parties, and they're, again, under Puerto Rico law, the beneficiary becomes a contracting party. And so the resolution of the single obligation under the single contract was split off artificially, cut off the beneficiary, and left then only one of the parties holding the bag. And we think that this, as a contract, the general rule underlying indispensability in contract cases has to do with the fact that there's one obligation that needs to be adjudicated among all contracting parties. And that was not done here. Can you help me with something here briefly and simplify this case a bit? What is it that you are seeking in this case? We are seeking primarily to reverse the court and actually have the court. Well, I don't mean that, but in terms of the merits of the case. We ideally want affirmance of the decision, of the propriety of the decision by my client to pay out the benefits on these valid annuities. As a procedural matter, in the alternative then. So you don't have to return the premiums? Correct. That's the main thing you don't want to do is return the premiums, right? Well, the main thing is we don't want to have to do one without the other. In the alternative, if we have to pay the premiums, then we have to wait until the doubt obligation should not be triggered until somebody pays us back. Whether it be, actually that could have been done if the brother had been in the case, as it could be, for example, in the western district of Texas. Could the beneficiaries that are suing here claim from you the face amount of the policy? Would you have to pay the policy twice? No, the amount is very similar, but not exactly. Other than the premiums, I'm not talking about the premiums. Would you have to pay what you have paid to the Spanish relative twice? Not the benefits themselves, just the premium. Just so I understand, could you make a recovery action against the plaintiffs if they got the premiums as opposed to the brother? We have not explored that angle. Well, you seem to – I thought you said, in effect, if – If I understood you correctly. Well, I thought you said one time you seemed to describe a situation where if you have to turn the money over to them, they have to give it right back to you. It's different. Okay. Do we pay – okay. There's a premium and the benefits. The amounts end up being very similar because under this policy, the benefits would grow with time and they hadn't. But the theory isn't – if I understand it, they bought the right to have you pay this third person. You deceived it. Yes. Yes. So now they say, well, you've got to give us back the premiums because what we bought was a void thing. Yes. If your position is the people who bought that thing got the benefit because this other guy got paid, why wouldn't you just go after them? Who else would need to be in the suit? You could just say, well, look, if you're going to get the premiums back, then you better pay us whatever benefit you got out of this deal. Why do you care about the brother? Who cares if the money comes from him as long as you get the money that you paid out? Well, we do argue – we have argued that it doesn't matter where it comes from. So then why do we need the brother in the case? Well, because they're full and fair. They would then argue – maybe then they would – on that claim, they would claim that he's indispensable because he has the money and they don't. Then maybe they'd have a good argument. But right now I don't quite see it. Thank you. You're welcome. Mr. Hernandez, good morning. Good morning, Your Honors. Attorney Jose Hernandez-Mayoral representing the police. Nothing in the district court's Rule 19A analysis constitutes an abuse of discretion, which is the standard of review for those determinations. The court first analyzed whether it could afford complete relief among the existing parties. We believe that National Western is misunderstanding that requirement. This is not about the desire for complete resolution of all related controversies and avoiding piecemeal litigation. That belongs in a Rule 19B analysis. This is about – it's a narrower question in the Rule 19A context where the judge asks if it can grant, fully grant, the relief that's being sought in this action. At that, it certainly can't because what our police are requesting is that the annuities be voided and that the premiums paid be returned. And that complete relief, that is a relief that the district court can completely grant. Can I ask? Yes. Do I understand one aspect of this? It's possible to structure one of the annuities so that the person who pays the premium would be getting the payout. Yes. So just so I understand, is your position that in a case like that, you could have gotten the full payout of the annuity you purchased and now come to the court and say, by the way, that was void, so I also want the premiums back? No, that couldn't happen. Well, how could that be different than this case? What's the difference? Because the only thing that's different is the beneficiary of the annuity, but why should that matter? Because the beneficiary is a third party. Why does it matter if it's a third party? In other words, you bought some, your clients bought something for a benefit. For an annuity, yes. Yeah, and the benefit was a payout. Now, it happened that they wanted some other person to get the payout rather than themselves. But the logic of your position seems to be that if you want to, if the insurance company wants to recover the payout it made, that's a separate action, and the person who purchased the annuity is entitled to the premiums in the interim. And that would suggest that even if you were the recipient of the payout, you could get the premiums, keep the cash, and then wait for them to come after you. That wouldn't be the case. Well, how is this case different? It is different, Your Honor, because if the contract is resolved, the amounts that the plaintiffs, the appellees, have received pursuant to the contract, they would have to turn back in return for the premiums. But this is a third party receiving the money. But they received it. That was the benefit to them. That's why they purchased the thing. They purchased it so this other party would get it. If it just happens, it's not themselves, but it's as if it went to them. Why else would they buy it? Well, that was the desire of the decedent to name this person as the beneficiary. That's who you're standing in the shoes of. Yes. Yes. So from his perspective, what he bought was a benefit to himself that took the form of a payout to a third party. Yes. So why is that any different than if the payout was to him directly? Because we do not possess the money. The difference is that when let's assume, which is the merits of the case, that these contracts are void because they were not validly executed or they were executed without spousal consent, which is one of the grounds for voiding the contract. And, therefore, they are invalid. What the code requires is that the parties, with the resolution of the contract, they return to each other what was given to them. They have a separate suit, and they even call it that in the summary judgment motion, a refund claim against the beneficiary. That is a separate suit that they can pursue. They don't deny that they can pursue that. What they want is to have, well, to throw in the difficulty of gaining personal jurisdiction over this person who is in Spain, and they doubt that there will be personal jurisdiction over him in Puerto Rico. But the code does not require a party to return what was not given to them. The fact that they named this third party as a beneficiary requires them to pursue a refund claim against him. Counsel, this probably oversimplifies it, but it seems that this whole problem is a result of the insurer being far too prompt in making payments to the beneficiary. I mean, if there was a question about the proper issuance of these policies at all, the money that's supposed to go to the beneficiary should have been placed in escrow. Thank you. Yes. And just to complete the point, and then the issue of the proper issuance of the policies could have been litigated the way it was, and I would think then if it turned out that the policies were null and void and the premium should be returned, I don't know how there could be any argument then that that money should be paid out to the beneficiary, which would eliminate that possible scenario where the insurance company has to return the premiums, but they're still on the hook to the beneficiary. That just couldn't play out. Well, Your Honor. You probably agree with the proposition that this is a sort of self-created problem for the insurer. Absolutely, Your Honor. And in the particular case of the annuity, the one they call annuity number two, which is the one that has the issue about who the real owner was, they themselves argue in their brief that the ownership signature was ratified. Well, that's an issue in the case. It was ratified afterwards by the spanner, and they argue that under those circumstances that policy, that contract, has no effect until ratified. So, in essence, they paid out a benefit in a contract that was still not ratified. So, obviously, that one they paid out prematurely, Your Honor. Well, either that or you were late raising the problem. Well, we weren't late in the sense that we discovered. It's an odd situation where the insurer, having no reason to believe it's doing anything other than what the purchaser wants, is doing exactly what the purchaser does seem to want, makes the payout, and then years later after everything's been paid out, all of a sudden now there's a question raised, gee, I think the whole thing was void. I'd like my premiums back. Your Honor, it had all the reason to believe that it was acting wrongly. It didn't procure the spousal consent, which is a requirement under Puerto Rico law, and it's doing business in Puerto Rico. It's accepting $3 million from a person and not fulfilling the legal requirements. But there was no objection raised by the person on whose behalf the premiums were being received and the payouts were being made. He didn't ever raise a single issue with it for years. Not for years. He died a few months later. A few months after the purchase. After the purchase. And then no one who stood in his shoes raised any objection until all the money was paid out. Until they learned about the existence, until they found out that the husband has spent $3 million without telling his wife that he was doing so. That he was spending carnival property on these annuities. They also had every reason to know about it because they had an unlicensed agent. They had a suspended agent. They were obtaining, they could have observed that the signatures in one of the annuities were photocopies of previous signatures, not newly obtained signatures. They should have, I mean, they had to know that. They were just being careless and didn't realize what was going on. That is why the wife and the children moved to have these annuities invalidated. They came up through this covery and they subsequently filed and requested the return of these premiums. How much time elapsed from the time that the payments were made to the beneficiary in Spain before the widow and her children notified the insurance company of the demand that they were making that the premiums be returned? Well, there were additional annuities, Your Honor, that were being litigated. As to those annuities, they filed an interpleader in local court. And while those were being resolved, through discovery, the existence of these two annuities arose. This would have been like the U.S. So this was discovered as a result of the Commonwealth interpleader action? That's right. And then that complaint was immediately amended to include this claim, the claim for these two. It was brought before the federal district court, and that's where the case was ultimately resolved. If I may continue on the Rule 19A, the second analysis was would Francisco Iglesias' interests be impaired? The district court concluded that because this judgment would not have res judicata effect on him, his ability to protect his interests would not be impaired. That analysis cannot be cataloged as an abuse of discretion. And the third element of Rule 19A, which is something that appellants clearly misunderstand, is the inconsistent obligations. As this court has stated, and it was part of a discussion with the appellant, inconsistent obligation pertains to when you have a court order that if you comply with it, you're forced to breach another court order. That would not be the situation here at all. So if there is no abuse of discretion as to 19A, we don't have to go into a 19B analysis that the district court didn't make. Now it's just a matter of the merits. Now the clearest ground for invalidation of these annuities is that the husband purchased them and National Western accepted the money without seeking spousal consent. The civil code is clear. Why did the judge avoid that issue? Well, he didn't have to reach that issue. You said it's the easiest, cleanest, clearest way to do it. It's the cleanest one. The judge avoided the annuities based on the other two grounds. One of the annuities because it was handled by an agent without a license, and the other one because it lacked any real signatures. So the court thought it didn't have to reach another ground for invalidation. But spousal consent is very clear. The civil code says you need written consent for any act of alienation of conjugal property. They claim this is not alienation because it is an investment. Well, but it's an investment for others. The conjugal property got nothing out of the purchase of these annuities. From that standpoint, it's clearly alienation. Now they say it might fall under the exception of things for personal or family use. So why are you urging that we look at the issue of the lack of consent? That suggests to me that you're somehow uneasy with the rationale that the district court offered for declaring these policies null and void, and your opponent has said that the district court has taken some liberties with the record. At least it did not approach the stipulated record in a fashion that's consistent with the summary judgment standard. Well, it's not that I am uneasy, Your Honor. It's that I've always thought that it's the better argument, and you're sitting. This is subject to the novel review, so I can restate it at this stage. But we can address the other ones as well. You have annuity number two. Annuity number two was originally solicited and signed by this person called Carlos Garcia. National Western rejected that application when it received it because they had canceled Carlos Garcia's contract because his license had been suspended by the Puerto Rican insurance commissioner because he was under investigation for fraud in the sale of annuities, and instructed a new agent or another agent to re-subscribe the policy and send him a blank form. Now, what this agent did was he didn't re-subscribe the policy. He took the application form rejected by National Western because it was procured by this Carlos Garcia guy, photocopied the annuitant signature, and pasted it into the new application. Now, we don't think that is valid. We don't think that constitutes valid consent from an annuitant. So, everything that you're reciting now, is that set forth in the stipulated record? Yes, absolutely, Your Honor. And then you have the owner's signature. This agent went to this office and got a signature from someone he thought was the Spaniard Francisco Iglesias. He didn't ask for identification, and it turned out that he wasn't Francisco Iglesias. They don't know who that guy was, and they learned in this case, through the litigation of this case, that Francisco Iglesias, the Spaniard, was not the guy who actually signed. And that's when they come with the ratification theory. Well, Your Honor, first of all, the district court correctly concluded that the Francisco Iglesias name as owner is not the Spanish guy. He is identified in the annuity with a distinct U.S. Social Security number that it is stipulated that the Spanish guy doesn't have. So, it has to be somebody else. Therefore, no one signed as an annuitant, and no one signed as the owner. There is no way that we can consider that that annuity was ever perfected. And therefore, it's not that it must be voided. It's that it never really existed. Thank you. Thank you. For rebuttal, just three quick points. First of all, there was talk earlier about problems being self-created. No, Puerto Rican law and policy require insurance companies to pay promptly, precisely upon the death of an annuitant or insured under a life insurance policy. Relatives may have urgent need for money, and actually, the policy stated by the insurance commissioner in the insurance code is for these claims to be paid promptly. If there are no documents on the record that give any rise to problems. In the case of the interpleader with the other annuities, there were specific reasons in that case why there was an interpleader. There were reasons not to pay in that case. Here, there were not. Now, another point, spousal consent. I want to point out that the plaintiffs misstate the law. Puerto Rico's Supreme Court, Pilot Life Insurance, cited in our briefs repeatedly. The Pilot Life Insurance Company in the Puerto Rico Supreme Court said that, as an exception to the general rule, policies such as life insurance policies and pensions that are tied to the life of the beneficiary or the life of one of the spouses are, as an exception, personalisimos, very personal, and therefore do not form part of the conjugal partnership and do not require the permission of the other spouse. There is a theory put forward by plaintiffs in their brief as appellees that is simply wrong, the suggestion that somehow the character changes from conjugal spousal property to personal property upon divorce. That is not correct. The reasoning of the court specifically said, we have established that it is necessary to exempt from that classification certain goods. Is that case cited in your brief? Yes. Pilot Life Insurance versus Crespo Martinez, a 1994 Puerto Rico Supreme Court opinion. It is, by the way, another plaintiff's policy. If this court were to disagree and somehow wish to entertain plaintiff's invitation to create new law, the court should be recommended to certainly consider certifying this to the Puerto Rico Supreme Court because of the policy implications. It would mean that every single annuity and every single life insurance contract in Puerto Rico, which right now do not require spousal consent on any of the forms, would be null and void, according to plaintiffs. That is not the law. We don't think we need to go that far. Pilot Life Insurance resolved the issue, but there were any doubts, certainly before reaching that result the court should consult the Puerto Rico Supreme Court. And last point with respect to signatures. That will be brief because your time is up. Thank you, Your Honors. With respect to the signatures, we just want to point out, again, the remedy. There is no provision of the Puerto Rico Insurance Code that requires original signatures. It just requires a writing. There was a writing. The whole dispute about the ownership status is not relevant to the validity of the annuity as a whole, simply to the portion dealing with ownership and whether or not that would have been relevant perhaps to benefits during the lifetime of the annuitant. Those benefits never came into play.